THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DWIGHT BURNS, Defendant-Appellant.

First District (5th Division)   No. 85—0055

Opinion filed May 27, 1988.

Steven Clark and Karen Michels, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Bonnie Meyer Sloan, and Robert M. Podlasek, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PINCHAM delivered the opinion of the court:

In an indictment defendant, Dwight Burns, was charged with armed robbery, residential burglary and home invasion. In another indictment codefendant Darryl Fletcher was similarly charged. Fletcher pled guilty. Following a jury trial the defendant, Burns, was found guilty and was sentenced to 27 years' imprisonment on the armed robbery and home invasion findings and to 15 years' imprisonment on the residential burglary finding. The sentences were concurrent. The defendant appeals. The pertinent issues presented for review are (1) whether the police officer's inadmissible hearsay testimony that the nontestifying codefendant, Fletcher, named the defendant as his accomplice in the commission of the alleged offenses violated the defendant's constitutional rights to confrontation and cross-examination; (2) whether the prosecutor injected prejudicial hearsay testimony into the trial by eliciting from the police officers the defendant's ali-

ases of "Buzz" and "Jabbo"; and (3) whether the prosecutor's comments during closing argument were impermissibly prejudicial.

The facts at the defendant's trial established that in the early morning of June 24, 1983, Steven Knox and Joseph Garcia were victims of an armed robbery, home invasion and residential burglary. They were asleep in the living room of their residence. The room air conditioner was on. They awakened and discovered an intruder armed with a knife standing over them. Knox and Garcia at trial identified this intruder as the codefendant, Darryl Fletcher (who was not on trial). Knox and Garcia saw another person in the apartment but they were unable to identify him. Fletcher and this person took various articles, including a stereo receiver, duffel bag, jewelry, money and the keys to Garcia's pickup truck, which was parked in the rear of the premises. When the offenders put the key in the ignition to Garcia's truck, an alarm sounded, which awakened Garcia's father, who lived in the apartment beneath Garcia. The offenders abandoned their stolen loot and fled on foot, pursued by Garcia's father and the police, who had been summoned. Fletcher was apprehended in the area shortly thereafter by the police but his unidentified accomplice escaped.

On November 2, 1983, five months after the offenses were committed, police officer O'Callahan went to Fletcher's house and obtained several photographs, one of which was of the defendant, Dwight Burns. Seven days later, on November 9, 1983, Officer Whalen talked to the codefendant Fletcher, who was in custody.

Following their conversation, Whalen stated that he submitted a request for a fingerprint comparison to be made of the defendant's fingerprints with the latent fingerprints found on the stereo receiver taken in the offenses and abandoned when the offenders fled. Defense counsel objected and asked for a mistrial, stating that Officer Whalen's testimony created the inference that the codefendant Fletcher made a statement to Officer Whalen which implicated the defendant in the commission of the offenses. The defense attorney's objection was overruled and his motion for a mistrial was denied. Whalen then testified that as a result of the fingerprint comparison he scheduled an interview with the defendant. Over defense counsel's objections Whalen further testified that during his interview of the defendant, he told the defendant that the codefendant Fletcher had told Whalen that he, Burns, the defendant, was the second offender in the home invasion offenses. Defense counsel's renewed objections were sustained and the jury was admonished to disregard this testimony of Officer Whalen.

■ The defendant contends that Officer Whalen's testimony that the nontestifying codefendant named him as his accomplice in the commission of the offenses was prejudicial, incriminating, inadmissible hearsay and violated his constitutional rights to confront and cross-examine his putative accuser. The State argues that Officer Whalen's testimony was elicited to explain police investigatory procedures and not to prove the truth of the matter asserted. The State further argues, assuming *arguendo* that Officer Whalen's testimony was inadmissible hearsay, the trial court sustained defense counsel's objection, instructed the jury to disregard the statement, and ordered the testimony stricken from the record, thereby rendering the error harmless beyond a reasonable doubt. We disagree with the State's contention.

At trial, Officer Whalen testified that he had a conversation with the codefendant Fletcher, who was in custody. Whalen further testified that following this conversation he submitted a request for a fingerprint comparison to be made against the defendant's fingerprints and the latent fingerprints found on the property taken in the robbery. Defense counsel objected and asked for a mistrial, stating that Whalen's testimony inferred that the codefendant Fletcher made a statement to him which obviously implicated the defendant in the commission of the offenses. The defense attorney's objection was overruled and his motion for a mistrial was denied. Whalen related further that as a result of the fingerprint comparison he scheduled an interview with the defendant.

Whalen's testimony was far more than a simple description of his investigating process. (*People v. Johnson* (1987), 116 Ill. 2d 13.) Whalen's testimony of the codefendant's statement to him directly implicated the defendant in the crimes. Whalen testified:

"Q. And what is the next thing you said to the defendant, if you can remember?

A. I told him that Darryl Fletcher had given his name—

[Defense Attorney]: Objection.

The Court: Overruled.

[Defense Attorney]: I'd ask for a side bar.

The Court: Denied. Proceed.

The Witness: That Darryl Fletcher had given me his name as the second offender in a home invasion robbery.

The Court: Objection sustained.

[Defense Attorney]: Ask for a mistrial.

The Court: *The jury is instructed to disregard the response. Be stricken from the record. Motion for mistrial will be denied.* Proceed." (Emphasis added.)

In the case at bar, we are concerned with the use of this incriminating, inadmissible hearsay evidence of the codefendant as substantive evidence against the defendant. (*Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620.) We are also concerned with the ineffectiveness of the trial court's meager instruction to the jury to prevent the prejudice to the defendant from his codefendant's confession through the testimony of Officer Whalen.

In *People v. Johnson* (1987), 116 Ill. 2d 13, the supreme court reversed the defendant's murder conviction because the codefendant's statement was introduced by the State as substantive evidence against the defendant Johnson. Likewise in *People v. Jones* (1988), 169 Ill. App. 3d 883 this court reversed Jones' conviction because the evidence which placed Jones at the scene of the crime with the victim was the incriminating, inadmissible hearsay statement of his codefendant Nowden, who did not testify. Here, as in *Johnson* and *Jones*, reversal of the defendant's conviction is likewise mandated because this defendant was also impermissibly prejudiced by the admission of his codefendant's statement which incriminated him.

The defendant cites *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, in support of his contention that Officer Whalen's testimony violated his constitutional rights of confrontation and cross-examination. In *Bruton,* the Supreme Court held that the defendant's confrontation clause rights of the sixth amendment made applicable to the States by the due process clause of the fourteenth amendment were violated when the codefendant's confession was admitted as substantive evidence against Bruton at their joint trial, even though the trial court carefully and meticulously instructed the jury that the codefendant's confession was admissible only against the codefendant. The Supreme Court in *Bruton* pointed out that a codefendant's confession that incriminates a defendant is so "inevitably suspect" and "devastating" that the ordinarily sound assumption that a jury would faithfully follow an instruction to disregard the confession as to the nonconfessing defendant could not be applied. *Bruton v. United States* (1968), 391 U.S. 123, 136, 20 L. Ed. 2d 476, 485, 88 S. Ct. 1620, 1628.

In *Lee v. Illinois* (1986), 476 U.S. 530, 90 L. Ed. 2d 514, 106 S. Ct. 2056, the Supreme Court held that the accused's constitutional right to confront and to cross-examine witnesses in a criminal case is primarily a functional right that promotes reliability of testimony in criminal trials. *Lee* was jointly tried with her codefendant boyfriend by the court without a jury for a double homicide. Both Lee and her codefendant confessed, but in their confessions each asserted some-

what contradictory roles to the other in the commission of the homicides. The trial court relied in part on the codefendant's confession as substantive evidence in finding Lee guilty. Lee's codefendant did not testify and thus Lee was not confronted by him and was unable to cross-examine him. The Supreme Court pointed out that Lee's confession and her codefendant's confession were not "interlocking" under *Parker v. Randolph* (1979), 442 U.S. 62, 60 L. Ed. 2d 713, 99 S. Ct. 2132,[1] and that the trial court's even partial reliance on Lee's codefendant's confession in finding Lee guilty violated Lee's constitutional rights to confront and cross-examine the witnesses against her, guaranteed under the sixth and fourteenth amendments to the Constitution of the United States. In reversing Lee's conviction the Supreme Court eloquently admonished:

"In *Pointer v. Texas*, 380 U.S. 400, 13 L. Ed. 2d 923, 85 S. Ct. 1065 (1965), this Court unanimously held that the Confrontation Clause was applicable to the States, and in doing so, remarked that it 'cannot seriously be doubted at this late date that the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him.' [Citations.] [W]e observed that '[t]here are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in the expressions of belief that the right to confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.' [Citation.]

On one level, the right to confront and cross-examine adverse witnesses contributes to the establishment of a system of criminal justice in which the perception as well as the reality of fairness prevails. To foster such a system, the Constitution provides certain safeguards to promote to the greatest possible degree society's interest in having the accused and accuser engage in an open and even contest in a public trial. The Confrontation Clause advances these goals by ensuring that convictions will not be based on the charges of unseen and unknown—and hence unchallengeable—individuals.

But the confrontation guarantee serves not only symbolic goals. The right to confront and to cross-examine witnesses is

---

[1]The holding of the Supreme Court in *Parker v. Randolph* (1979), 442 U.S. 62, 60 L. Ed. 2d 713, 99 S. Ct. 2132, that the admission of nontestifying codefendants' interlocking confessions at their joint trial does not violate the constitutional right of confrontation and cross-examination, was recently overruled in *Cruz v. New York* (1987), 481 U.S. 1168, 95 L. Ed. 2d 162, 107 S. Ct. 1714.

primarily a functional right that promotes reliability in criminal trials. In *California v. Green,* 399 U.S. 149, 158, 26 L. Ed. 2d 489, 497, 90 S. Ct. 1930, 1935 (1970), we identified how the mechanisms of confrontation and cross-examination advance the pursuit of truth in criminal trials. Confrontation, we noted,

(1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth; (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness making his statement, thus aiding the jury in assessing his credibility.' (footnote omitted).

Our cases recognize that this truthfinding function of the Confrontation Clause is uniquely threatened when an accomplice's confession is sought to be introduced against a criminal defendant without the benefit of cross-examination. As has been noted, such a confession 'is hearsay, subject to all the dangers of inaccuracy which characterize hearsay generally.' " *Lee v. Illinois,* 476 U.S. at 539-41, 90 L. Ed. 2d at 525-26, 106 S. Ct. at 2061-62.

Both *Bruton* and *Lee* reversed the defendants' convictions because a nontestifying codefendant's confession was admitted and relied on as evidence in a joint trial against the other defendant. The instant case is practically identical to *Bruton* and *Lee.* This defendant was likewise implicated as an accomplice by the codefendant's post-arrest statement to Officer Whalen. Admission of the codefendant's statement requires reversal of the defendant's conviction.

■ The trial court's admonishment to the jury *"to disregard the response. Be stricken from the record"* (emphasis added) was nothing more than a futile collocation of words and failed of its purpose as a legal protection to the defendant. In *People v. Hernandez* (1988), 121 Ill. 2d 293, our supreme court held:

"The State argues that even if there was a potential for unfair prejudice by the admission of Cruz' statements, the trial court guaranteed a fair trial by giving limiting instructions advising the jury that statements by Cruz and Hernandez could be considered only against their authors. That is precisely the argument rejected by this court in Buckminster and by the Supreme Court half a century later in Bruton. [Citation.] According to Buckminster, '[i]t would be difficult to

*imagine any evidence that would be more prejudicial' than inculpation of the defendant by a nontestifying codefendant. (People v. Buckminster* (1916), 274 Ill. 435, 448.) *To suggest that the jury disregard such explosive evidence is, in the words of Judge Learned Hand, a 'recommendation to the jury of a mental gymnastic which is beyond, not only their powers, but anybody's else.'* ([Citations.] *('we cannot accept limiting instructions as an adequate substitute for [the] constitutional right of cross-examination'*); [Citation.] *('The naive assumption that prejudicial effects can be overcome by instructions to the jury \*\*\* all practicing lawyers know to be unmitigated fiction'*).) Likewise, the trial court's ruling to strike Mares' reference to a 'friend' could not undo the damage already done; as this court has previously warned, *'it is practically impossible for the average juror to divest his mind of such testimony.'* [Citation.]

We hold, therefore, that under these circumstances the defendant was deprived of his constitutional right to confront a prosecution witness and, consequently, of a fair trial." (Emphasis added.) 121 Ill. 2d at 317-18.

In the case at bar, the defendant was likewise deprived of his constitutional right to confront a prosecution witness and consequently of a fair trial. In reversing Cruz' murder conviction in the companion case to *Hernandez, People v. Cruz,* 121 Ill. 2d 321, the supreme court held:

"In *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, the Supreme Court ruled that the admission in a joint trial of a statement by a nontestifying codefendant violated the defendant's constitutional right to confront witnesses against him, where that statement expressly named the defendant as an accomplice in the crime charged. The *Bruton* Court reasoned that *'there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored'* [citation] *and that the admission of a statement 'expressly implicating' the defendant constituted such a context. \*\*\**
\*\*\*

In this case we are not dealing with a carefully redacted written confession, we are dealing with out-of-court admissions made by defendants to third parties which inculpated other defendants. To date then, the Supreme Court has examined ad-

mission of a codefendant's confession which *explicitly* names the defendant [citation] ***.

The *Bruton* decision, as well as decisions of this court, recognizes that *there are circumstances under which the presumption that a jury can and will follow a trial court's instruction to disregard an incriminating inference generated by a confession or admission introduced against a codefendant must fall.* [Citations.] *In Bruton, as we have noted, this meant the presentation to the jury of a statement by a codefendant directly naming the defendant as an accomplice.*" (Emphasis added.) 121 Ill. 2d at 329-30.

We note that in *Bruton* the trial court gave a far more extensive and informative instruction and direction to the jury to disregard the codefendant's confession.than was given by the trial court in the case at bar. For the reason previously set forth, we hold that on the record before us, there is no occasion to depart from the time-honored teaching that a factfinder's reliance on a nontestifying codefendant's confession which inculpates the defendant violates the constitutional rights of confrontation and cross-examination.

■ The defendant further contends that the State injected prejudicial hearsay testimony into the trial by eliciting from Officers O'Callahan and Tansy the defendant's aliases of "Buzz" and "Jabbo." The State, however, argues that there was no error where the testimony of the officers concerning the names depicted on the State's exhibits was relevant to clarify the evidence which might have been published to the jury.

Officer O'Callahan testified that on November 2, 1983, he recovered a number of photographs from the codefendant Fletcher's apartment. Officer O'Callahan testified further, "I wrote the nickname 'Buzz' underneath the defendant who was depicted in the picture." The defendant did not object. By his failure to object to Officer O'Callahan's testimony, the defendant waived the error. Alleged errors not preserved or brought to the attention of the trial court by objections are normally waived for purposes of review. *People v. Arnold* (1984), 104 Ill. 2d 209, 217.

■ Following Officer O'Callahan's testimony, Officer Tansy testified. The prosecution asked Officer Tansy if he knew the defendant "by any other name." Defense counsel objected and moved for a mistrial. The court sustained the objection and denied the motion. Officer Tansy then identified one of the People's exhibits as a photo of the defendant and the codefendant. The prosecution then attempted to question Officer Tansy regarding the name "Buzz" written on the ex-

hibit which depicted the defendant's picture. Defense counsel objected, and a sidebar was held, the objection was overruled and defense counsel again moved for a mistrial, which was denied. During the sidebar, the trial court informed the State "you might ask whether or not he knows him by that name." Subsequently, the State asked Officer Tansy:

"Q. Do you know anyone by the name of Jabbo?

A. Yes, I do.

Q. Who is that, Detective?

A. That is Dwight Burns, a name he used."

It was improper to ask Officer Tansy questions about the defendant's assumed name. Where the defendant testifies in his own behalf, it is proper to question him regarding his use of assumed names if proof of the assumed names is shown to be material. (*People v. Pumphrey* (1977), 51 Ill. App. 3d 94, 366 N.E.2d 433.) However, such evidence adduced at trial solely to raise the inference that the defendant had used assumed names in order to evade apprehension by law enforcement officers for prior criminal offenses is highly prejudicial and improper. *People v. Pumphrey* (1977), 51 Ill. App. 3d 94.

In the case at bar, defendant's identification as "Jabbo" was not material to prove the charges against him. His use of the assumed name had nothing to do with the issues in the case and was totally irrelevant. There was no legitimate reason to ask Officer Tansy if he knew "anyone by the name of 'Jabbo,' " and the question was improper. We do not perceive wherein the fact that the defendant's nickname, "Jabbo," had any bearing whatever upon his guilt or innocence of the offense charged against him. It had no connection whatever with this case and shed no light upon it. Therefore the objection to Officer Tansy's testimony concerning the defendant's alias should have been sustained. We conclude, however, on the facts present, the error was harmless.

■■ ■ Lastly, the defendant contends that during the State's rebuttal closing argument the prosecution published photographs of the defendant to the jury, directing their attention to the gold chain defendant was wearing in the picture. The defendant argues that this conduct and the accompanying remarks were improper because it encouraged the jury to infer that the gold chain worn by the defendant was the stolen chain which belonged to the victim.

It is well established that although a prosecutor is permitted wide latitude in his closing argument (*People v. Cunningham* (1984), 130 Ill. App. 3d 254, 473 N.E.2d 506; *People v. Clay* (1984), 124 Ill. App. 3d 140, 463 N.E.2d 929), his comments must be based on facts in evi-

dence and the reasonable inferences drawn therefrom (*People v. Burba* (1985), 134 Ill. App. 3d 228, 479 N.E.2d 936; *People v. Cunningham* (1984), 130 Ill. App. 3d 254); however, defense counsel cannot invite or provoke a prosecutor's response and then claim that defendant was prejudiced thereby (*People v. Cunningham* (1984), 130 Ill. App. 3d 254, 266).

Here, Officer David testified that in the process of searching the defendant he removed items of jewelry from the defendant. The officer testified further that defendant "had a gold chain on his neck we couldn't get off without breaking the cap." During closing argument counsel for the defendant argued:

> "What supports their argument. What would you expect to support their argument. Where else, where else is the substance of this case. David. He comes in here and he tells you he went—was at the jail and he searched Mr. Burns. He said he found jewelry on him. Here's a man who wears jewelry. Was it any jewelry from Mr. Garcia or Knox. No. There's no tie in there. If they had any jewelry and you know all the jewelry he had. If they had any jewelry from Mr. Knox and Mr. Garcia on Mr. Burns, you would have heard about it. So, you don't have that kind of support for this case."

In rebuttal the State in closing argument stated:

> "MR. FEELEY: *** I'd ask you to look back into the evidence and recall the items not recovered. The *gold chains,* the Phoenix watch and the screw driver.***
>
> * * *
>
> I would ask you to take a look at the photos involved here while I'm going through the argument. *And see if there's [sic] any gold chains around the neck of Dwight Burns.*
>
> MR. FRIEDMAN: Objection, your Honor. There is no link from any gold chains to that being of Mr. Garcia or Mr. Knox.
>
> THE COURT: Sustained.
>
> MR. FRIEDMAN: I would ask they not be shown the photos then.
>
> THE COURT: That will be sustained, also, for that purpose.
>
> MR. FRIEDMAN: Ask for a mistrial because Mr. Feeley has shown it to two people already, Judge.
>
> THE COURT: Just a moment. Motion for mistrial denied.
>
> MR. FEELEY: *I would further point out to you the defendant seems to like gold.*" (Emphasis added.)

It is our view in the case at bar that the prosecutor did not exceed the appropriate bounds of legitimate closing argument. Officer

David testified that the defendant "had a gold chain on his neck we couldn't get off without breaking the cap." The prosecutor's comments appear to be in response to the closing argument of defense counsel. During the prosecutor's closing argument the defense counsel objected, stating, "There is no link from any gold chains to that being of Mr. Garcia or Mr. Knox." This objection was sustained. Yet, the prosecutor continued, "I would further point out to you the defendant seems to like gold." This reference to the defendant's affinity for gold was improper. Although the trial court sustained defendant's objection, the prosecution, with total disregard to the trial court's order, improperly continued as if the objection had been overruled. "I would further point out to you the defendant seems to like gold." This was not a legitimate comment and should not have been made. The error, however, was harmless.

We conclude, for the reasons stated, the defendant did not receive a fair trial. Since this cause must be reversed and remanded for a new trial, it is unnecessary to discuss the defendant's other assignments of errors, which in all likelihood will not recur on retrial.

Reversed and remanded.

LORENZ, P.J., and MURRAY, J., concur.