THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD JOHNSON, Defendant-Appellant.

Second District   No. 2—92—0536

Opinion filed December 30, 1993.

G. Joseph Weller and Kim M. DeWitt, both of State Appellate Defender's Office, of Elgin, and Daniel M. Kirwan, of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers and Stephen E. Norris, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

The defendant, Richard Johnson, age 35, was charged by indictment filed October 2, 1991, with one count of aggravated criminal sexual assault (Ill. Rev. Stat. 1991, ch. 38, par. 12—14(b)(1) (now 720 ILCS 5/12—14(b)(1) (West 1992))), a Class X felony, for allegedly placing his penis in the vagina of a 10-year-old girl between July 5, 1991, and August 31, 1991. He was also charged with one count of aggravated sexual abuse (Ill. Rev. Stat. 1991, ch. 38, par. 12—16(c)(1)(i) (now 720 ILCS 5/12—16(c)(1)(i) (West 1992))), a Class 2 felony, for allegedly placing his hands on the girl's buttocks during the same attack as alleged in count I. Following a jury trial, the defendant was convicted on January 15, 1992, of both counts. He was sentenced on April 29, 1992, to concurrent sentences of 12 years in prison on the assault count and seven years on the abuse count. This appeal followed. We affirm.

The alleged victim, N.G., age 10, testified at trial that on one weekend between July 4 and August 31, 1991, while she was staying with her aunt in North Chicago, she accompanied her aunt to the home of a friend, Sharon Gardner. While there, her aunt left with some friends for about 20 minutes, during which time N.G. was alone in the house with the defendant and a baby. N.G. said she was watching television and the baby was asleep on the couch when the defendant sat next to her on a couch. N.G. said the defendant scooted near her, and she got up. She said the defendant then followed her and grabbed her. She said the defendant removed her pants, pushed her onto the couch and "put his thing" from "his pants" in her "private," which she then identified as her vagina. She said that while this occurred, the defendant also "was grabbing" her buttocks.

N.G. also testified that after the attack, the defendant threatened to kill her if she told anyone, then gave her $5 and promised to take her shopping. She said she then ran upstairs to the bathroom and remained there until her aunt returned. She said that she did not immediately tell anyone of the attack because she was scared, but some weeks later she finally told her mother and a friend, D.C., about the incident.

On cross-examination, N.G. said that she stayed with her aunt for "a little longer" than a week and that after returning home, she no-

ticed that she was bleeding. She said she waited "at least a week or so" before telling her mother of the incident.

The girl's mother testified she discussed the attack with her daughter some time after the school year began. After their talk, the mother said she discovered that five pair of her daughter's panties had bloodstains on them.

Sharon Gardner testified that the defendant was the father of her children and that N.G. had been in her home some time during July. She recalled that she and the victim's aunt left the Gardner home on one occasion when the defendant and N.G. were together.

The parties stipulated N.G.'s aunt would testify that she, Gardner and another companion left the Gardner home for 10 to 15 minutes and that when they returned, N.G. was sitting on the couch.

Mark Pleasant, an investigator for the Department of Children and Family Services (DCFS), testified that he received a call from the Child Abuse Hotline on September 15, 1991, concerning N.G. and that he and Lake County Sheriff's Detective Lee Brezsinski went to the child's school in Zion the next day and interviewed her. Brezsinski did not testify at trial.

Pleasant testified that N.G. told him that she had a "problem" with the defendant and that the problem occurred one time "between the 4th of July and before school started, by about two weeks." Pleasant said that after some questioning, N.G. finally told him that the defendant penetrated her vagina with his penis.

N.G.'s friend, D.C., age 13, testified that she and N.G. had been friends for about four years. D.C. said that about a week before school started in the summer of 1991, N.G. told her that N.G. had been "raped by *** a guy named Richard." D.C. said that N.G. described the incident and that N.G. did not tell her that the defendant had threatened her or given her money.

The parties stipulated that Dr. Oster would testify that he examined N.G. on September 18, 1991, and that N.G.'s vagina was "somewhat enlarged." The doctor would testify that this condition could be normal for N.G. but also was consistent with sexual assault. The doctor also found that based on the victim's history, she had no prior vaginal bleeding and probably never menstruated before. The stipulation concluded that "with this history, bleeding would be due to trauma and not menstruation." It was further stipulated that N.G. told Dr. Oster that the defendant was already naked when he entered the living room before the sexual assault.

The defendant did not testify. The jury returned guilty verdicts on both the assault and abuse counts.

On appeal, the defendant raises three claims: (1) he is entitled to a new trial because the jury received inconsistent and inaccurate instructions regarding the prosecution's burden of proof; (2) he was denied a fair trial because the prosecution repeatedly vouched for the credibility of its main witness, the alleged victim, and offered personal opinion as to matters not in evidence; and (3) the trial court abused its discretion in sentencing the defendant to twice the minimum prison term given the defendant's lack of prior criminal history, that he committed a single act of assault and the minimal physical harm caused to N.G. For the following reasons, we affirm.

The defendant's first claim is unavailing because although inaccurate jury instructions were given concerning the State's burden of proof, the given instructions did not alter the State's burden in this case.

The following instruction on the assault charge, People's instruction No. 10, was read to the jury and a copy of the same instruction was sent to the jury room:

"To sustain the charge of aggravated criminal sexual assault, the State must prove the following propositions:

First, That the defendant committed an act of sexual penetration upon *** [N.G.]; and

Second: That the defendant was 17 years of age or older and that *** [N.G.] was under 13 years of age when the act was committed.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that *each* one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty." (Emphasis added.)

The instruction was taken from Illinois Pattern Jury Instructions, Criminal, No. 11.58B (3d ed. 1992), but the word "each" was used in place of "any" in the instruction that was read and given to the jury. The jury was, therefore, instructed that it could find the defendant not guilty only if it found that the State failed to prove *all* of the propositions instead of *any* one of the propositions.

We begin by noting that the instruction given in this case was obviously incorrect. The State has the burden of proving *every* essential element of a crime charged by proof beyond a reasonable doubt. (*People v. Biers* (1976), 41 Ill. App. 3d 576, 581; *In re Winship* (1970), 397

U.S. 358, 361-64, 25 L. Ed. 2d 368, 373-75, 90 S. Ct. 1068, 1071.) This is not contested.

The defendant's lawyer did not object to the jury instruction at trial, and thus the argument is, generally, waived for purposes of appeal. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186; *People v. Roberts* (1979), 75 Ill. 2d 1, 16.) However, when grave errors are present in jury instructions, as in the present matter, we may consider the issue on appeal. (134 Ill. 2d R. 451(c); *People v. Reddick* (1988), 123 Ill. 2d 184, 198.) In criminal cases, the court has the responsibility to see that the jury is properly instructed on elements of the crime charged, the presumption of innocence and the burden of proof. (*People v. Parks* (1976), 65 Ill. 2d 132, 137.) If the court fails to properly instruct on any of these key issues, the defendant's right to a fair trial is seriously in doubt. (*People v. Williams* (1983), 120 Ill. App. 3d 900, 904.) The giving of contradictory instructions on an essential element of the case is prejudicial error and will not be cured by the fact that another instruction is correct. *People v. Jenkins* (1977), 69 Ill. 2d 61, 66.

■ In the case at bar, there is no question that the instruction which was both read and given in written form to the jury on aggravated criminal sexual assault was incorrect. Under the clear dictates of *Jenkins* and later cases, reversal would be required were it not for the fact that in this case the error, apparently an inadvertent typographical error, did not shift the burden or make it easier for the State to prove its case.

As is clear from the instruction read in this case there was only *one* element which was in controversy on the assault charge: whether the defendant committed an act of penetration on N.G. The second element of the jury instruction merely recited that the defendant had to be over age 17 and the alleged victim under age 13. Neither of these propositions was in controversy. It was clear that the defendant was 35 at the time of trial, and N.G. was 10. Even though the instruction given said that the jury should find the defendant not guilty only if "both" elements were found lacking, in fact there was only one element to consider. The result was no different than if the instruction had correctly said the jury should find the defendant not guilty if "any" of the elements was lacking.

The supreme court in *Jenkins* noted:

> "Where the instructions are contradictory the jury is put in the position of having to select the proper instruction—a function exclusively that of the court. As far as can be known, defendant might well have been convicted on the basis of the

erroneous instruction. Certainly, a person should not stand to lose his liberty because a jury has received equivocal instructions." *Jenkins*, 69 Ill. 2d at 67.

In the present matter, the jury was *not* required to select the proper instruction, because any reading of the charge would command the jury to convict only if it found penetration was committed by the defendant against N.G. Therefore, there was no possible confusion as to what the jurors were being required to find in order to convict or acquit.

Further, the present matter is factually distinguishable from *Jenkins*. In *Jenkins*, the supreme court reversed and remanded because the trial court gave both a correct and an incorrect jury instruction on the same count. More importantly, one of the instructions in *Jenkins* omitted an essential element of the crime charged: that the jury could convict on attempted murder only if it found the defendant was not justified in using the force he employed. (*Jenkins*, 69 Ill. 2d at 63.) That omission negated the defendant's major claim and vitiated his defense. In the present matter, no such crucial omission occurred.

Also in the present matter, the instruction given for aggravated criminal sexual abuse was correct, which is especially relevant in this case because the abuse and assault charges were based on identical evidence and conduct. This case turned on the credibility of N.G. at trial. The accusation was that the defendant committed an act of penetration and fondling during the same incident. Because the jury found the defendant guilty on the abuse charge, which was based on fondling during the act of penetration, we are confident that the jury intentionally and without confusion found the defendant guilty of penetration. It would be impossible for the jury to believe the fondling charge without also believing the penetration charge on these facts. The jury found N.G. credible on the fondling; therefore, it must have found her credible on the penetration charge.

We note also that while the assault instruction was flawed, the court did properly instruct the jury as to presumption of innocence and advised the jury correctly that the State had to prove every element beyond a reasonable doubt. This instruction was echoed by the prosecution during its argument to the jury. When a language error occurs in a jury instruction which, standing alone, might mislead the jury, it is proper to inquire as to the charge as a whole. (*People v. Goff* (1985), 137 Ill. App. 3d 108, 115-16.) Because we have determined that this matter is factually distinguishable from *Jenkins*, we may

consider the charge as a whole. Doing that, we determine that the jury was competently instructed.

Even grave errors of constitutional magnitude will be deemed harmless if they are harmless beyond a reasonable doubt. (*People v. Shields* (1991), 143 Ill. 2d 435, 446; *People v. Fields* (1988), 170 Ill. App. 3d 1, 13.) As we noted above, the jury clearly found the defendant guilty of the fundamental complaint which supported a finding beyond a reasonable doubt of both penetration and fondling.

The defendant cites *People v. Sanders* (1984), 129 Ill. App. 3d 552, as mandating reversal. However, that case is distinguishable. In *Sanders*, the defendant argued, *inter alia*, that the trial court committed reversible error when it misstated the burden of proof on the offense of attempted murder. The court orally instructed the jury that it could convict the defendant if it found that "any one" of two propositions was proved beyond a reasonable doubt. (*Sanders*, 129 Ill. App. 3d at 562.) The elements of that crime were that the defendant performed an act which constituted a substantial step toward murder and that the defendant had the intent to commit murder. Clearly, the two elements were distinct, and both elements were controverted at trial. In the present matter, as we have noted, there was only one controverted element.

Also unavailing is the defendant's citation to *People v. Bush* (1993), 157 Ill. 2d 248. In *Bush*, the supreme court affirmed the appellate court's reversal of a defendant's conviction of home invasion based on the use by the trial court of an erroneous jury instruction. In *Bush*, the court gave the pattern jury instruction on home invasion but also gave a nonpattern instruction "which misstated the law and allowed the jury to find defendant guilty even if he possessed the non-culpable mental state indicative of an authorized entry." (*Bush*, 157 Ill. 2d at 256.) No such nonpattern instruction was given in the present matter.

The defendant next claims that he was denied a fair trial because of improper remarks by the prosecution during closing argument.

The defendant's attorney did not object to most of the comments which are complained of on appeal. Ordinarily, a defendant waives an error by failure to object at trial. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186.) Plain errors may, however, be considered on appeal. (134 Ill. 2d R. 615(a).) The defendant claims, alternatively, that his attorney's failure to object at trial amounted to constitutionally ineffective assistance. We will, therefore, consider the assigned error under a claim of ineffective assistance. To succeed on such a claim, a defendant must demonstrate that his trial counsel's performance fell below

an objective standard of reasonableness and that there is a reasonable probability that the defendant would not have been convicted but for that deficient performance. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) The *Strickland* test was adopted in Illinois in *People v. Albanese* (1984), 104 Ill. 2d 504. Our review of the prosecutor's closing argument satisfies us that she made no improper remarks. Therefore, it was not ineffective for the defendant's attorney not to object.

Generally, a prosecutor is permitted wide latitude in closing argument. (*People v. Burns* (1988), 171 Ill. App. 3d 178, 187.) However, a prosecutor, representing the power of the State of Illinois, has a special responsibility to choose words carefully so as not to place the authority of his or her office behind the credibility of State's witnesses. (*People v. Roach* (1991), 213 Ill. App. 3d 119, 124.) The jury is the sole judge of credibility of witnesses. (*People v. Novak* (1981), 94 Ill. App. 3d 1024, 1027.) A prosecutor may express an opinion if it is based on the record (*People v. Johnson* (1987), 119 Ill. 2d 119, 143) and may draw inferences reasonably drawn from evidence presented. (*People v. Pryor* (1988), 170 Ill. App. 3d 262, 271.) He or she may not, however, state a personal opinion regarding the veracity of a witness or vouch for a witness' credibility. (*People v. Wilson* (1990), 199 Ill. App. 3d 792, 795-96.) Improper prosecutorial remarks on closing argument do not warrant reversal unless the argument as a whole is so prejudicial to the defendant as to deprive him of a fair trial. (*People v. Cox* (1990), 197 Ill. App. 3d 1028, 1041; *People v. Cunningham* (1984), 130 Ill. App. 3d 254, 266.) When reviewing allegations of prosecutorial misconduct, the complained-of comments must be viewed in the context of the entire closing argument of both the State and the defendant. *People v. Smith* (1990), 199 Ill. App. 3d 839, 854.

■ In the present matter, the prosecution's closing argument, viewed as a whole, was a proper and fair commentary on evidence received at trial. The prosecutor's remarks included the following:

"This case is one of credibility, ladies and gentlemen. It's totally credibility.

You will receive the jury instructions from the judge, and the judge will instruct you that you are the sole judges of the believability of the witnesses and the weight to be given to the testimony of each of them. In considering the testimony of the witness, you may take into account his ability and opportunity to observe, his age, his memory, his manner while testifying, any interest, bias or prejudice."

These remarks demonstrate that the prosecutor was not attempting to impermissibly throw the weight of the State behind her arguments or attempting to suggest that she could judge credibility for the jury. The above-quoted comments were followed by extensive comments by the prosecution on the demeanor during testimony of the State's key witness, the alleged victim. The prosecutor avoided stating her personal opinion, and even corrected herself on one occasion when she used the words "in my opinion," asking that those words be stricken. She then continued: "I am submitting to you that inconsistencies in her [N.G.'s] story does [sic] not mean that she's a liar."

The defendant also claims that the prosecutor improperly referred to facts not in evidence when she explained why a certain police officer involved in the investigation of the present matter did not testify or why panties and bed sheets belonging to the alleged victim that were apparently stained with blood were not offered into evidence. The prosecutor, on rebuttal, said the following:

"What good are laundered sheets going to do you? What good are the laundered panties going to do you. *** 'Can you do some tests to see if there were ever blood on these panties?' No, you can't do that. The laundered panties aren't going to do any of us any good.

*　*　*

Now she [defense attorney] says you didn't hear from Det. Brezsinski. They are trying to hide something because you didn't hear from Det. Brezsinski. Mr. Pleasant [who did testify] said, 'My partner and I, Det. Brezsinski, went and we spoke to *** [N.G., who] told us this, this and this. Well, it's my prerogative who I want to put on as a witness. It's my decision. And in my decision I said I have Mr. Brezsinski and Mr. Pleasant. I think I'll put Mr. Pleasant on and let him tell you what he and Mr. Brezsinski heard. Now, you you [sic] want me to put Mr. Brezsinski on again to tell you the exact same thing?"

The prosecutor was not improperly introducing evidence from Mr. Brezsinski, but rather was responding to a criticism from defense counsel and attempting to explain why the officer was not called. When complained-of statements by prosecutors are rebuttal arguments, the statements will not be considered improper if they appear to have been provoked or invited by the defense counsel's argument. (*People v. Toliver* (1993), 246 Ill. App. 3d 842, 847.) As to the introduction of the laundered sheets and panties, the prosecutor was again responding to criticism by the defendant and was not referring to facts not in evidence. Whether a laboratory may or may not be able

to detect blood on a laundered sheet or pair of panties is not relevant here because it was not at issue in the trial nor was it addressed on appeal. The prosecution was responding in a commonsense way to a defense criticism.

Cases cited by the defendant on improper prosecutorial comment are distinguishable. In *Roach*, reversal was granted based on improper prosecutorial comment because the prosecutor "clearly and repeatedly stated his personal feelings about the witnesses' credibility. Most of his opinions were not based on the record." (*Roach*, 213 Ill. App. 3d at 124.) In *People v. Lee* (1992), 229 Ill. App. 3d 254, reversal was granted based on a combination of errors, which included ineffective assistance for the defendant's attorney's failure to proffer an instruction on intoxication, the prosecutor's misstatement of the law, and the prosecutor's erroneous vouching for a witness. (*Lee*, 229 Ill. App. 3d at 258-60.) Because we determine that the prosecutor's comments in this case were within acceptable limits, the defendant's claim that he was prejudiced must fail.

The defendant's final claim, that the trial court abused its discretion in sentencing him to 12 years in prison, is unavailing. The defendant points out that he had no prior record of serious criminal offenses (though he had eight traffic violations and a conviction of driving under the influence), that he committed a single act of assault, and that N.G. suffered only minimal physical harm. We believe the trial court acted well within its discretion on sentencing.

Because the trial court is in a better position than is a reviewing court to determine an appropriate penalty, the sentencing decision of a trial court is given great deference. (*People v. Streit* (1991), 142 Ill. 2d 13, 18-19; *People v. Wesley* (1993), 250 Ill. App. 3d 245, 264.) Therefore, a sentence may not be reduced on appeal unless the reviewing court finds that the trial court's actions were an abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154.) A sentence authorized by State statute will be overturned only if it is so disproportionate to the crime that it "shocks the conscience of reasonable men." *People v. Landers* (1927), 329 Ill. 453, 457.

■ It is clear that the 12-year sentence for aggravated criminal sexual assault, a Class X felony, and the seven-year sentence for the Class 2 abuse count were both within the statutory limits. A Class X felony carries a statutory sentence of not less than six nor more than 30 years (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(3) (now 730 ILCS 5/5—8—1(a)(3) (West 1992))), and a Class 2 felony carries a statutory sentence of not less than three nor more than seven years (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(5)

(now 730 ILCS 5/5—8—1(a)(5) (West 1992))). The defendant does not claim that the trial court considered improper factors in determining sentence, and we believe that a concurrent sentence of 7 and 12 years is well within the discretion of the trial court. Although seven years is the maximum sentence for a Class 2 felony, the penalty runs concurrent with the 12-year sentence, which represents less than half the maximum that could be imposed for a Class X felony.

The defendant's claim that he is entitled to a reduced sentence, in part, because his attack "caused only minimal physical harm" is both unconvincing and unsupported. It hardly bears restating that the crime of sexually assaulting a child is among the most horrible that a person can commit, and the harm caused by such attacks is often difficult to fully assess. Also, merely because the defendant attacked the child only once and he has no extensive criminal history, he is not automatically entitled to a lower sentence. In sum, the trial court's sentence determination was not an abuse of discretion.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

GEIGER and DOYLE, JJ., concur.